IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

                Plaintiff,                OPINION AND ORDER

v.

                                          16-cr-5-wmc

MAURICE A. WITHERS,

                Defendant.

---

On May 4, 2017, a jury convicted defendant Maurice Withers on three counts of sex trafficking using force, threats, or coercion in violation of 18 U.S.C. § 1591; one count of attempted sex trafficking using force, threats or coercion in violation of § 1594; two counts of sex trafficking a minor in violation of § 1591; one count of transportation of a minor for prostitution, in violation of 18 U.S.C. § 2423; and two counts of transportation for prostitution, in violation of 18 U.S.C. § 2421. Before the court is Mr. Withers' *pro se* motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29. (Dkt. #142.) As Mr. Withers has failed to identify any issue that would entitle him to such extraordinary relief, his motion will be denied.

## BACKGROUND

At the outset, while the court will reach the merits of Withers' *pro se* motion, it does so in a somewhat cursory fashion to ensure that the guilty verdicts do not suffer from a glaring defect requiring immediate correction. Withers is represented by counsel in this case, and the Seventh Circuit has held that "a defendant who is represented by counsel relinquishes the right

1

to file his own *pro se* submissions." *United States v. Khatib*, 606 Fed. Appx. 845, 847 (7th Cir. 2015); *see also United States v. Patterson*, 576 F.3d 431, 436 (7th Cir. 2009) ("The decision regarding whether to allow a defendant to represent himself when he is also represented by counsel is 'solely within the discretion of the trial court.'") (citations omitted). Withers continues to be represented by his trial counsel for purposes of sentencing and neither he nor his attorneys has indicated an intent to disturb the status quo. Indeed, while Mr. Withers previously has expressed dissatisfaction with his trial attorneys, the court has repeatedly declined to appoint him new counsel because the relationship had not broken down and his counsel had been ably representing him throughout. The same holds true now, and it simply appears that his attorneys disagree with Mr. Withers' desire to pursue this motion. This is not surprising: the court is denying Mr. Withers' motion because it has no merit and only highlights that the jury had ample evidence to rely upon for its verdict.

## OPINION

A district court has the authority to set aside a jury's verdict and enter a judgment of acquittal in response to a motion for judgment of acquittal or "renew[ed] . . . motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). In reviewing such a motion, the court: (1) defers to the jury's credibility determinations in particular; and (2) applies a highly deferential standard of review generally. Indeed, the court's review is limited to "'whether, after viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Torres-Chaves*, 744 F.3d 988, 993 (7th Cir. 2014) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)).

I.  Timeliness

The government objected to his motion as untimely, but it will not be denied on that basis.  Federal Rule of Criminal Procedure 45(b)(1)(B) permits the court to extend the 14-day time frame when a party fails to request an extension before that time frame expires "if the party failed to act because of excusable neglect."  This language requires an equitable analysis, balancing "the danger of prejudice, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *United States v. Cates*, 716 F.3d 445, 448 (7th Cir. 2013) (quoting *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

Here, the jury returned the verdict on May 4, 2017, and court received Mr. Withers' motion on May 25, 2017, making it slightly more than a week late.  The court has not required the government to respond, and the motion has not delayed this matter.  Accordingly, the court will turn to the merits of his motion.

II.  Merits

Mr. Withers challenges the guilty verdicts as to Counts 7, 3, 4, 8 and 9.  As an initial matter, as to each verdict, he claims that the evidence did not support a finding that his actions affected interstate commerce because he never crossed state lines.  However, the government's theory of the case did not rely on Mr. Withers actually crossing state lines for each count.  Rather, it submitted several additional types of evidence related to the allegations described in this indictment that affected interstate commerce, including:  records of Mr. Withers' and victim cell phone usage; numerous online advertisements posted by Mr. Withers (or at his direction) on the website "Backpage"; and Facebook messages and postings between Mr.

Withers and the victims. As such, while the jury may have considered evidence that Mr. Withers' crossed state lines, it also received evidence that Mr. Withers' used the internet and his cell phone, both of which undoubtedly affects interstate commerce. *United States v. Campbell*, 770 F.3d 556, 574 (7th Cir. 2014) (agreeing that the use of the internet implicated interstate commerce for purposes of 18 U.S.C. § 1591 and acknowledging that "[o]ther circuits have interpreted the interstate commerce element of the TVPA expansively"); *see United States v. Phea*, 755 F.3d 255, 263 (5th Cir. 2014) (use of mobile phone, internet advertisement and out-of-state customer fulfilled interstate commerce element). Accordingly, the jury's findings that Mr. Withers' actions affected interstate commerce were sufficiently supported by evidence.

### A. Count 7

Turning to the his arguments as to Count 7, Mr. Withers claims that the testimony of X regarding a night at the Potawatomi casino did not support a guilty verdict because no sex took place and there was no evidence of force or threat of force. Count 7 charged:

> During the period from in or about June 2015 to in or about July 2015, in the Western District of Wisconsin and elsewhere, the defendant, Maurice Adonis Withers, knowingly recruited, enticed, harbored, transported, and maintained by any means "Jane Doe 4" [who now has been identified as X] in and affecting interstate commerce, knowing, or in reckless disregard of the fact, that "Jane Doe 4" had not attained the age of 18 years and would be caused to engage in a commercial sex act.

(Superseding Indictment, dkt. #54, at 3-4.) Mr. Withers outlines X's testimony, pointing out that X testified that no sex took place that night. This testimony is not inconsistent with the jury's guilty verdict.

For one, Count 7 did not require a finding that Mr. Withers used force, threat of force or coercion. Rather, besides to finding that Withers "recruited, enticed, harbored, transported, and maintained" X, it required only the finding that X has not attained the age of 18. Furthermore, while X did testify that no sex occurred the night at the Potawatomi, this count did not charge Mr. Withers with respect to one specific night; it charged him with sex trafficking as to X for the period of time between June 15 and July 2015. Given that X testified that Mr. Withers reached out to her over Facebook about "calls," and that after June 20, 2015, she engaged in commercial sex acts that he arranged, the jury's guilty verdict stands.

B. **Count 3**

Next Withers attacks the guilty verdict as to the count "involving XX in Janesville" that involved the Holiday Inn. Multiple counts involved XX, but it appears that he is challenging the sufficiency of the verdict as to Count 3, which charged:

> On or about August 16, 2015, in the Western District of Wisconsin, the defendant, Maurice Adonis Withers, knowingly attempted to recruit, entice, harbor, transport, and maintain by any means "Jane Doe 1" [who now has been identified as XX], in and affecting interstate commerce, knowing that force, threats of force, coercion, and any combination of such means, would be used to cause "Jane Doe 1" to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1).

(Superseding Indictment, dkt. #54, at 2.) Mr. Withers seeks relief because XX and XXX both testified that Mr. Withers was not with them at the Holiday Inn on August 16, that the hotel room was not registered in his name and that no commercial sex act took place. During trial, however, XXX and XX testified that they went to a Holiday Inn in Janesville at Mr. Withers' direction. XXX testified that Mr. Withers instructed her over his cell phone to register for a hotel room because Mr. Withers had placed Backpage ads in an attempt to set up "dates" for

5

XX. She further testified that Mr. Withers instructed her to ensure that XX stayed in the room to carry out the "date," and to collect the money for him, but XX did not want to engage in the commercial sex act even though a potential "john" appeared at the hotel in response to the ad. XX's testimony corroborated XXX's. While Mr. Withers may be correct that no commercial sex act actually took place, Count 4 charged him with *attempted* sex trafficking and sufficient evidence to supports the jury's conclusion that Mr. Withers attempted to "recruit, entice, harbor, transport and maintain" XX to commit a commercial sex act that day.

### C. Count 4

Mr. Withers also challenges his guilty verdict in the count "involving XXX in La Crosse." He appears to be challenging the sufficiency of the evidence of Count 4, which charged that:

> On or about August 29, 2015, in the Western District of Wisconsin, the defendant, Maurice Adonis Withers, knowingly recruited, enticed, harbored, transported, and maintained by any means "Jane Doe 2" [who now has been identified as XXX] in and affecting interstate commerce, knowing that force, threats of force, coercion, and any combination of such means, would be used to cause "Jane Doe 2" to engage in a commercial sex act.

(Superseding Indictment, dkt. #54, at 2.) Mr. Withers argues that XXX testified that he never used force or threat of force against her, but he is mistaken.

XXX testified that Mr. Withers once grabbed her face in a way that made her feel scared, and she described an incident prior to August 29 when she saw Mr. Withers grab and hit XX. She also explained that she was nervous about her finances because she was having difficulty making payments on a loan. As to the specific commercial sex act she carried out in a vehicle in La Crosse, XXX stated that when she drove with Mr. Withers to La Crosse, she did not expect him to set up a date for her, but he ended up placing an ad for one. After receiving a

6

response from the ad, Mr. Withers set up a date for her, and ultimately instructed her on how she should complete the act, stood outside the vehicle watching throughout and knocked when the time was up. She further stated that on the same day, Mr. Withers drove her to Madison, where she was instructed to engage in another commercial sex act. As to this second act specifically, she stated that she did not want to commit the act but felt that she had to do it, get money for it and give it to Withers to get back home. Given that this testimony clearly suggests that XXX felt, at the very least, coerced into completing the acts (and may have reasonably believed that he would use force upon her if she did not do as he said), her testimony supports the guilty verdict.

### D. Counts 8 and 9

Finally, Withers challenges the verdicts on the counts "involving XXXX in Las Vegas." This challenge appears to address the verdicts as to Counts 8 and 9. Count 8 charged:

> From on or about April 22, 2015 to on or about April 24, 2015, in the Western District of Wisconsin and elsewhere, the defendant, Maurice Adonis Withers, knowingly transported and caused to be transported an individual, that is, "Jane Doe 5" [who now has been identified as XXXX], in interstate commerce, from Wisconsin to Nevada, with intent that "Jane Doe 5" engage in prostitution.

(Superseding Indictment, dkt. #54, at 4.)

Count 9 charged:

> During the period from in or about April 2015 to in or about May 2015, in the Western District of Wisconsin and elsewhere, the defendant, Maurice Adonis Withers, knowingly recruited, enticed, harbored, transported, and maintained by any means "Jane Doe 5" [who now has been identified as XXXX] in and affecting interstate commerce, knowing that force, threats of force, coercion, and any combination of such means, would be used to cause "Jane Doe 5" to engage in a commercial sex act.

7

(*Id.*) Mr. Withers argues that he cannot be found guilty of both of these charges because they are the "exact same act." It would appear that he is making a Fifth Amendment double jeopardy-type claim, which prohibits subjecting a defendant to multiple punishments for the same crime. *Boyd v. Boughton*, 798 F.3d 490, 493 (7th Cir. 2015). However, the two counts involve distinct crimes arising from different, although related, facts. Count 8 charged him with violating 18 U.S.C. § 2421, which required the jury to find that the Mr. Withers transported XXXX for the purpose of prostitution. Count 9 charged him with violating 18 U.S.C. § 1591, which required the jury to find that Mr. Withers caused XXXX to engage in a commercial sex act. As these two counts implicate two distinct crimes, there is no double jeopardy claim here.

As to Count 9 specifically, Mr. Withers also argues that there was no testimony that he used threats, fraud or force at any time related to the trip to Las Vegas. Aside from the fact that this count charged him with using force, threat of force or coercion (not fraud), this count is not limited to the Las Vegas trip, but instead encompasses the time period generally between April and May of 2015. Independent of other witness testimony, XXXX's testimony alone provided evidence that Mr. Withers used force, threat of force or coercion to cause her to engage in commercial sex acts. In fact, she testified that in April of 2015 -- during what she thought would be a day trip to the Kalahari located in Wisconsin but turned out to be a several-day drive to Denver and Las Vegas where she and other victims engaged in commercial sex acts -- she felt "scared" that he would leave her behind without money; she felt "terrified" after she saw Mr. Withers hit XX ; that Mr. Withers possessed a gun; and that Mr. Withers did not give her food when she needed it for her hypoglycemia. Moreover, even if Count 9 had been limited to the Las Vegas trip specifically, XXXX testified that she did not want to go; that she was

"terrified" that Mr. Withers would "make" her go on dates; that she was concerned for her life; and that at one point in Las Vegas Mr. Withers slapped her when she objected to having oral sex with him. Accordingly, there was more than enough evidence for the jury to reach its verdict. Mr. Withers thus is not entitled to relief from judgment on this, or any other count.

ORDER

IT IS ORDERED that defendant Maurice Adonis Withers' Motion for a Judgment of Acquittal (dkt. #142) is DENIED.

Entered this 22nd day of June, 2017.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge